**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————

IVAN HERRERA MENDEZ and VALENTIN VIVAR,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*                                              Case No.:

                        Plaintiffs,              **CLASS AND COLLECTIVE**
                                                 **ACTION COMPLAINT**

                v.                                Jury Trial Demanded

976 MADISON RESTAURANT LLC
        d/b/a KAPPO MASA,
TAKAYAMA MANAGEMENT LLC
        d/b/a BAR MASA,
TAKAYAMA, INC.
        d/b/a MASA,
ARTBLOCK LLC
        d/b/a KAPPO MASA,
MASAYOSHI TAKAYAMA, and
LAWRENCE GAGOSIAN,

                        Defendants.

————————————————————————

        Plaintiffs, IVAN HERRERA MENDEZ and VALENTIN VIVAR (herein,

"Plaintiffs"), on behalf of themselves and others similarly situated, by and through their

undersigned attorneys, hereby file this class and collective action Complaint against Defendants,

976 MADISON RESTAURANT LLC d/b/a KAPPO MASA, TAKAYAMA MANAGEMENT

LLC d/b/a BAR MASA, TAKAYAMA, INC. d/b/a MASA, ARTBLOCK LLC d/b/a KAPPO

MASA ("Corporate Defendants"), MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN

("Individual Defendants," and together with Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.     Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages, including those due to an invalid tip credit, (2) liquidated damages and (3) attorneys' fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages, including those due to an invalid tip credit, (2) statutory penalties, (3) liquidated damages and (4) attorneys' fees and costs.

3.     Plaintiff IVAN HERRERA MENDEZ also alleges that, pursuant to the FLSA and NYLL, he is entitled to recover from Defendants (1) compensation for retaliation and (2) attorneys' fees and costs thereof.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.     Plaintiff, IVAN HERRERA MENDEZ, is a resident of Bronx County, New York.

7.     Plaintiff, VALENTIN VIVAR, is a resident of Bronx County, New York.

8.     Corporate Defendant, 976 MADISON RESTAURANT LLC, is a domestic limited liability company organized under the laws of the State of New York with an address for

service of process and principal place of business at Lawrence Gagosian c/o Artblock LLC, 980 Madison Avenue, New York, NY, 10075.

9.     Corporate Defendant, TAKAYAMA MANAGEMENT LLC, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and principal place of business at Masayoshi Takayama c/o Takayama Management LLC, Suite 401, 10 Columbus Circle, New York, NY, 10461.

10.     Corporate Defendant, TAKAYAMA, INC., is a domestic business corporation organized under the laws of the State of New York with an address for service of process and principal executive office at Masayoshi Takayama c/o Takayama, Inc., 301 W 57th Street, Suite 15F, New York, NY, 10019.

11.     Corporate Defendant, ARTBLOCK LLC, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and principal place of business at National Registered Agents, Inc., 28 Liberty Street, New York, NY, 10005.

12.     Individual Defendant, MASAYOSHI TAKAYAMA, is the co-founder, Chief Executive Officer, Head Chef and owner of all Corporate Defendants. MASAYOSHI TAKAYAMA exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. MASAYOSHI TAKAYAMA had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to MASAYOSHI TAKAYAMA regarding any of the terms of their employment, and MASAYOSHI TAKAYAMA would have the authority to effect any changes to the quality and

terms of their employment. MASAYOSHI TAKAYAMA ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. MASAYOSHI TAKAYAMA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

13.    Individual Defendant, LAWRENCE GAGOSIAN, is the co-founder, Chief Operating Officer and owner of all Corporate Defendants. LAWRENCE GAGOSIAN exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. LAWRENCE GAGOSIAN had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to LAWRENCE GAGOSIAN regarding any of the terms of their employment, and LAWRENCE GAGOSIAN would have the authority to effect any changes to the quality and terms of their employment. LAWRENCE GAGOSIAN ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. LAWRENCE GAGOSIAN had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

14.    At all relevant times, Defendants, 976 MADISON RESTAURANT LLC d/b/a KAPPO MASA, TAKAYAMA MANAGEMENT LLC d/b/a BAR MASA, TAKAYAMA, INC. d/b/a MASA, ARTBLOCK LLC d/b/a KAPPO MASA, each was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

4

15.   Defendants operate or operated three (3) sushi bars under the trade names "Kappo Masa," "Bar Masa" and "Masa" throughout New York:

   a.   "Kappo Masa" - 976 Madison Avenue, Ground Floor, New York, NY, 10075;

   b.   "Bar Masa" - 10 Columbus Circle, Time Warner Center, 4th Floor, New York, NY 10019; and

   c.   "Masa" - 10 Columbus Circle, Time Warner Center, 4th Floor, New York, NY 10019

   (collectively the "Masas").

16.   Corporate Defendants, 976 MADISON RESTAURANT LLC d/b/a KAPPO MASA, TAKAYAMA MANAGEMENT LLC d/b/a BAR MASA, TAKAYAMA, INC. d/b/a MASA, ARTBLOCK LLC d/b/a KA        PPO MASA, operate the Masas as a single integrated enterprise, under the control of their owners, Individual Defendants MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN. Individual Defendants, MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN, own and operate each Corporate Defendant. Specifically, the Masas are engaged in related activities, share common ownership and have a common business purpose:

   a.   All the Masas have been founded, owned and operated as a sushi bar by Individual Defendants, MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN, who have developed a friendship more than thirty (30) years ago. *See* Exhibit A for a brief history of the Masas.

   b.   All the Masas use a central marketing department.

c.  All the Masas receive legal advice from the General Counsel of TAKAYAMA, INC.'s corporate headquarters, who oversees legal compliance for all the Masas.

d.  All paychecks of Masas' employees are issued through the payroll department of TAKAYAMA, INC.'s corporate headquarters.

e.  Prior to opening, all new Masas must be approved by Individual Defendants, MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN.

f.  All the Masas share the same "Masa" name, which is Individual Defendant MASAYOSHI TAKAYAMA's nickname, in their brand names and are marketed jointly on one (1) common website: http://www.masanyc.com ("Website"). *See* **Exhibit B** for the display of all three (3) brand names on the Website.

g.  All the Masas' locations are exhibited on the Website. *See* **Exhibit C** for the locations.

h.  All the Masas' menus share similar sushi bar dishes at similar prices.

i.  All the Masas share a common look and feel: a contemporary perspective on traditional Japanese ingredients and culture.

j.  All the Masas offer their venues for private parties and events on their websites. The private events inquiry forms on all three (3) of their websites are commonly powered by Gather, which is an online platform that allows Individual Defendants, MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN, to easily organize their time and resources across the three (3) Masas. *See* **Exhibit D** for private events inquiry forms of the Masas.

k.  All the Masas are jointly marketed on Individual Defendant MASAYOSHI TAKAYAMA's Instagram account. *See* **Exhibit E** for his Instagram account, which advertises all three (3) Masas.

l.  All the Masas have a joint notice statement about the COVID-19 crisis in 2020. "All Masa restaurants—Masa, Bar Masa & Kappo Masa—remain closed. … we have set up a staff relief fund on GoFundMe or you can purchase a eGift Card to use in the future at our restaurants." *See* **Exhibit F** for the COVID-19 notice for all the Masas.

m.  The Masas regularly share and exchange non-exempt employees, who are interchangeable among the Masas. Defendants require employees to work at Masas locations different from their primary place of employment on special occasions (e.g., parties or private events) whenever one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs.

n.  Employees were regularly required to transport items between the three (3) Masas locations, in accordance with the directives of central management, including the Individual Defendants, MASAYOSHI TAKAYAMA and LAWRENCE GAGOSIAN.

17.  Plaintiffs were required to deliver supplies and ingredients between all of Defendants' Masas. **All** of the Masas are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Masas share identical illegal wage and hour policies, the Masas and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class members for whom Plaintiffs seek to represent.

18.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

19.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 1 6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

21.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper minimum wage and the proper overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs. A subclass of tipped employees has additional claims for unpaid minimum wage and overtime, including those from an improperly deducted tip credit. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

22.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

23.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees, (including but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants at the Masas on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

24.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay the proper wages, (ii) failing to pay overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, (iii) failing to provide Class members with proper wage statements with every payment of wages, and (iv) failing to properly provide wage notices to Class members, at date of hiring and dates of all wage changes, per requirements of the NYLL.

27.     With regard to Plaintiffs and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime due to time-shaving and because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

28.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and

have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

30.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work;

d)  Whether Defendant properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e)  Whether Defendants properly compensated Plaintiffs and Class members the proper overtime compensation under the NYLL;

f)  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

g) Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

h) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

i) Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

j) Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL;

k) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

l) Whether Defendants provided proper wage statements for each pay period to Plaintiffs and Class members, and whether those wage statements properly stated Plaintiffs' wage and overtime compensation in accordance with the NYLL.

## STATEMENT OF FACTS

33.    In or around February 2015, Plaintiff IVAN HERRERA MENDEZ was hired by Defendants to work as a food runner for Defendants' Kappo Masa, located at 976 Madison Avenue, Ground Floor, New York, NY, 10075. Plaintiff MENDEZ's employment was terminated in or around February 2020 by managers Mark Hoyt and Andrew Linartatus.

34.    Throughout his employment, Plaintiff MENDEZ was scheduled to work Tuesdays, Thursdays, and Saturdays from 6:00 p.m. to 12:00 am., in addition to Fridays from

11:30 a.m. to 3:30 p.m. and from 6:00 p.m. to 12:00 a.m., for a total of twenty eight (28) hours per week.

35.    From the start of his employment to in or around April 2015, Plaintiff MENDEZ was paid an hourly wage of seven and a quarter ($7.25) dollars per hour. From in or around April 2015 to in or around September 2018, Plaintiff MENDEZ was paid an hourly wage of ten ($10) dollars per hour. From in or around September 2018 to in or around January 2019, Plaintiff MENDEZ was paid an hourly wage of eight and a quarter ($8.25) dollars per hour. From in or around January 2019 to the date of his termination, Plaintiff MENDEZ was paid an hourly wage of ten ($10) dollars per hour. Throughout his employment, Defendants did not properly compensate Plaintiff MENDEZ for tip credit. As a result, Plaintiff MENDEZ was paid below minimum wage while Defendants claimed invalid tip credit.

36.    Plaintiff MENDEZ, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL,

(vi) failed to accurately track daily tips earned or maintain records thereof, (vii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (viii) failed to provide a proper wage statement with every payment of wages informing Plaintiff MENDEZ and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

37.    Plaintiff MENDEZ, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including preparing food including cutting lemons, making desserts including ice cream, washing the dishes, packing deliveries, buying food ingredients, restocking supplies, and delivering inventories to and from the three (3) Masas. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

38.    Furthermore, from in or around July 2019 to the date of his termination, Plaintiff MENDEZ was regularly bullied by Mohammed Khan while they were working. Mr. Khan regularly bumped into Plaintiff MENDEZ and, at one time, Mr. Khan splashed water at Plaintiff MENDEZ's face. When Plaintiff MENDEZ complained to Defendants, the general manager told Plaintiff MENDEZ to stop creating problems and stop telling them anything about the incidents. Mr. Khan continued bullying Plaintiff MENDEZ, and Mr. Khan splashed water at Plaintiff MENDEZ again. This time, Plaintiff MENDEZ pointed at Mr. Khan and said "stop it." Mr. Khan then complained to the general manager, and the general manager looked at the recorded video footage. Although Plaintiff MENDEZ was merely pointing his finger at Mr. Khan, the general manager fired Plaintiff MENDEZ. Plaintiff MENDEZ was never shown the video footage. These

circumstances clearly show a hostile work environment that Plaintiff MENDEZ had to endure, and also show Defendants' retaliation after Plaintiff MENDEZ raised the issue of hostile work environment.

39.     Plaintiff MENDEZ and Class members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they failed to provide proper wage statements due to an invalid tip credit for each payment period. In other words, Plaintiff MENDEZ and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

40.     Defendants failed to provide Plaintiff MENDEZ and the Class members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff MENDEZ did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of the NYLL.

41.     In or around March 2015, Plaintiff VALENTIN VIVAR was hired by Defendants to work as a food runner for Defendants' Kappo Masa, located at 976 Madison Avenue, Ground Floor, New York, NY, 10075. Plaintiff VIVAR's employment was terminated in or around January 2020 by managers Mark Hoyt and Andrew Linartatus.

42.     From the start of his employment to in or around November 2015, Plaintiff VIVAR was scheduled to work Tuesdays, Thursdays and Saturdays from 4:30 p.m. to 11:30 p.m., in addition to Mondays and Wednesdays from 11:00 a.m. to 3:00 pm. and from 5:00 p.m. to 11:00 p.m., for a total of forty one (41) hours per week.

43.     From in or around November 2015 to the date of his termination, Plaintiff VIVAR was scheduled to work Mondays from 4:30 p.m. to 11:00 p.m., Wednesdays from 5:30 p.m. to

12:00 a.m., Tuesdays from 11:00 a.m. to 3:30 pm. and from 4:00 p.m. to 11:00 p.m., and Fridays and Saturdays from 11:30 a.m. to 3:30 pm. and from 4:00 p.m. to 11:00 p.m., for a total of forty six and a half (46.5) hours per week.

44.    From the start of his employment to in or around November 2015, Plaintiff VIVAR was paid an hourly wage of seven and a quarter ($7.25) dollars per hour. From in or around November 2019 to the date of his termination, Plaintiff VIVAR was paid an hourly wage of ten ($10) dollars per hour. Throughout his employment, Defendants did not properly compensate Plaintiff VIVAR for tip credit. As a result, Plaintiff VIVAR was paid below minimum wage while Defendants claimed invalid tip credit.

45.    Plaintiff VIVAR, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff VIVAR, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) failed to accurately track daily tips earned or maintain records thereof, (vii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (viii)

failed to provide a proper wage statement with every payment of wages informing Plaintiff VIVAR and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

46.     Plaintiff VIVAR, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including preparing food including cutting lemons, making desserts including ice cream, washing the dishes, packing deliveries, buying food ingredients, restocking supplies, and delivering inventories to and from the three (3) Masas. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

47.     Plaintiff VIVAR and Class members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they failed to provide proper wage statements due to an invalid tip credit for each payment period. In other words, Plaintiff VIVAR and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

48.     Defendants failed to provide Plaintiff VIVAR and the Class members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff VIVAR did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of the NYLL.

49.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage, and the proper

overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, FLSA Collective Plaintiffs and Tipped Subclass members. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

50.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

51.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

52.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

<u>**STATEMENT OF CLAIM**</u>

**COUNT I**

<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT**</u>

53.    Plaintiffs IVAN HERRERA MENDEZ and VALENTIN VIVAR reallege and reaver Paragraphs 1 through 52 of this class and collective action Complaint as if fully set forth herein.

54.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

55.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

57.     At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

58.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half, including overtime wages owed due to Defendants' invalid tip credit policy.

59.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

61.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

63.     Plaintiff MENDEZ suffered damages as a result of retaliatory termination by Defendants after he raised the issue of hostile work environment.

64.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

65.     Plaintiffs IVAN HERRERA MENDEZ and VALENTIN VIVAR reallege and reaver Paragraphs 1 through 64 of this class and collective action Complaint as if fully set forth herein.

66.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

67.     Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them proper wages in the lawful amount for all hours worked. Defendants were not entitled to claim any tip credits.

68.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

69.     Defendants failed to properly notify employees of their overtime pay rate, in direct violation of the NYLL.

70.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because such tip credit

allowance was not clearly included in wage statements to tipped employees for each payment period.

71.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under the NYLL.

72.    Plaintiff MENDEZ suffered damages as a result of retaliatory termination by Defendants after he raised the issue of hostile work environment.

73.    Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid wages including overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL. In addition, Plaintiff MENDEZ is entitled to receive compensation for retaliatory termination by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

   a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

   b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

   c.  An award of unpaid wages, including those due to an invalid tip credit under the FLSA and the NYLL;

d.  An award of statutory penalties as a result of Defendants failure to comply with NYLL wage notice and wage statement requirements;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wage and overtime compensation, pursuant to 29 U.S.C. § 216;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wage and overtime compensation pursuant to the NYLL;

g.  An award of damages for retaliatory termination as a result of Defendants' willful failure to resolve the hostile work environment suffered by Plaintiff MENDEZ;

h.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.  Designation of this action as a Class Action pursuant to FRCP 23;

k.  Designation of Plaintiffs as Representatives of Class; and

l.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: July 9, 2020

Respectfully submitted,

By:   */s/ C.K. Lee*
      C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*